*N°* **18-3373**

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

**ANTHONY NOVAK**

*Plaintiff-Appellee,*

**v.**

**THE CITY OF PARMA, et al.**

*Defendants-Appellants*

**On Appeal from the United States District Court
For the Northern District of Ohio at Cleveland** *Anthony Novak v. The City of
Parma, et al.*, **N.D. Ohio Case No. 1:17-cv-02148**

---

**PRINCIPAL BRIEF OF APPELLANTS
THE CITY OF PARMA, KEVIN RILEY, AND THOMAS CONNOR
(ORAL ARGUMENT REQUESTED)**

---

**SUBODH CHANDRA (0069233)**
**PATRICK KABAT (NY 5280730)**
THE CHANDRA LAW FIRM LLC
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
216.578.1700 Phone
216.578.1800 Fax
Subodh.Chandra@ChandraLaw.com
Patrick.Kabat@ChandraLaw.com
*Attorneys for Plaintiff-Appellee*
*Anthony Novak*

**MONICA A. SANSALONE (0065143)**
**STEVEN D. STRANG (0085444)**
GALLAGHER SHARP LLP
Sixth Floor – Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio  44115
Ph: (216) 241-5310
Fax: (216) 241-1608 – Fax
msansalone@gallaghersharp.com
sstrang@gallaghersharp.com
***Attorneys for Defendants-Appellants***
***The City of Parma, Kevin Riley***
***and Thomas Connor***

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 26.1, Defendants-Appellants make the following disclosure:

1.     Is said party a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party?

No.

2.     Is there a publicly-owned corporation, not a party to the appeal that has financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest?

No.

 s/Monica A. Sansalone                           Date:  August 2, 2018
Monica A. Sansalone (0065143)
Steven D. Strang (0085444)
Gallagher Sharp LLP

# TABLE OF CONTENTS

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST ......................................................................................................

TABLE OF AUTHORITIES ................................................................. iv-ix

STATEMENT OF REASONS WHY THE COURT SHOULD HEAR ORAL ARGUMENT ................................................................................... x

I.   STATEMENT OF JURISDICTION ................................................. 1

II.  STATEMENT OF ISSUES PRESENTED FOR REVIEW ............................... 2

III. STATEMENT OF THE CASE AND FACTS ................................................. 2

A.   Introduction ........................................................................... 2

B.   Factual Background And Allegations In The Amended Complaint. .......... 5

C.   Procedural History. ................................................................. 8

IV.  SUMMARY OF ARGUMENTS ................................................................. 12

V.   ARGUMENT ......................................................................................... 14

A.   The District Court Erred In Denying The Motion To Dismiss Filed By Riley And Connor. .......................................................... 14

1. Standard of review ............................................................ 14

2. Riley and Connor are entitled to qualified immunity against Novak's claims arising under § 1983. Claims 1-11 of the Amended Complaint should be dismissed. .......................... 16

3. The First Amendment claims (counts 1-6) fail to state a claim because Novak had no "right" to post a fraudulent Facebook page intended to confuse the public. Even if such a right is assumed for purposes of argument, it was not a right "clearly established" at the time of the police investigation. ....................................... 17

4. Novak's Fourth Amendment claims (Counts 7-11) should be dismissed ................................................................. 23

a. The malicious prosecution claims fail, warranting dismissal of Count 11 ................................................................. 23

       i. Novak's Amended Complaint does not plead facts sufficient to establish the essential elements of a malicious prosecution claims.......................................................................................23

       ii. Connor's eventual conclusion that Novak's page was an official police page does not save the malicious prosecution claims from dismissal.................................................................24

       iii. Novak cannot meet the second element of his malicious prosecution claims, the element requiring lack of probable cause………...........................................................................27

    b. The Fourth Amendment claims in Counts 7-9 are premised on an unsupported allegation that Connor lied in preparing the arrest warrant and should be dismissed..............................28

  5. The conspiracy claim (Count 15) should be dismissed...........................29

  6. The Federal Privacy Protection Act does not apply (Count 16). This claim should be dismissed.............................................................30

  7. The supervisor liability claim against Lt. Riley should be dismissed (Count 19, erroneously listed as Count 18)...........................31

  8. The state law claims should be dismissed as a matter of law (Counts 20-29, erroneously listed as Counts 19-28)................................31

B. The District Court Erred In Denying The Motion To Dismiss Filed By The City Of Parma...................................................................................33

  1. Standard of review...................................................................................33

  2. The final policymaker claim (Count 12) should be dismissed................33

  3. Count 13 alleges that the City of Parma maintained an unconstitutional policy or practice. This claim should be dismissed because the Amended Complaint does not allege prior instance of misconduct or point to a specific unconstitutional policy………...........................................................................38

  4. The failure to train claim (Count 14) should be dismissed. .....................41

  5. The Federal Privacy Protection Act claim should be dismissed..............44

VI. CONCLUSION.................................................................................................46

CERTIFICATE OF COMPLIANCE PURSUANT TO Fed. R. App. P. 32(G) and 6 Cir R. 32....................................................................................48

CERTIFICATE OF SERVICE .............................................................................49

ADDENDUM DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS SIXTH CIRCUIT RULE 30(g)(1) DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ...................................................50

SIXTH CIRCUIT RULE 30(g)(1) DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ......................................................................50

# TABLE OF AUTHORITIES

**Cases**

*Advanced Cardiovascular Systems, Inc. v. Slimed Life Systems, Inc.*,
988 F.2d 1157, 1160 (Fed. Cir. 1993) ....................................................15

*AmerisourceBergen Corp. v. Does*, 81 A.3d 921 (Pa.Super. 2013) ........................21

*Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009)................................................... 29, 31-32

*Bailey v. City of Ann Arbor*, 860 F.3d 382, 385 (6th Cir. 2017) ...............................1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544...............................................15, 29, 31, 35

*Berryman v. Rieger,* 150 F.3d 561, 563 (6th Cir.1998)..............................................1

*Bible Believers v. Wayne Cty.*, 805 F.3d 228, 260–61 (6th Cir. 2015)....................35

*Bower v. Fed. Exp. Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). ......................14, 15, 33

*Chesher v. Neyer*, 477 F.3d 784, 794 (6th Cir. 2007)...............................................2

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 379,
109 S. Ct. 1197, 1200 (1989)...........................................................................42

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) ...............................................35

*Compare J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*,
650 F.3d 915 (3d Cir. 2011) ........................................................................ 21-22

*Cook v. Hubbard Exempted Vill. Bd. of Educ.*, 116 Ohio App.3d 564, 569
(11th Dist.1996) .............................................................................................32

*Courtright v. City of Battle Creek*, 839 F.3d 513, 523 (6th Cir. 2016) ....................1

*Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832
(6th Cir. 2007)..................................................................................29

*Dillingham v. Millsaps*, 809 F.Supp.2d 820, 845 (E.D. Tenn. 2011).....................31

*Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir.2006))...................42

*English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir.1994) ...............................................16

*Farah v. Esquire Magazine*, 736 F.3d 528, 535 (D.C. Cir. 2013)) ................... 19-20

*Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) ........................36

*Garcia v. Montgomery Cty., Md.,* No. CIV. JFM-12-3592,
2013 WL 4539394, at *7 (D. Md. Aug. 23, 2013) ..............................................30

*Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 471–72
(N.D. Ohio 2012) ...................................................................................16, 34

*Gregory v Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).................................16

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727,
73 L.Ed.2d 396 (1982)...........................................................................12, 16

*Harris v. Anderson*, No. 5:10-CV-207-KSF, 2011 WL 3267931, at *4
(E.D. Ky. July 29, 2011)............................................................................42

*Iacampo v. Hasbro, Inc.*, 929 F. Supp. 562, 567 (D. R.I. 1996) ............................15

*Jackson v. City of Highland Park*, 2015 U.S. Dist. LEXIS 68115
(E.D. Mich. May 27, 2015)........................................................................39

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562
(6th Cir. 2013)............................................................................................16

v

*Jones v City of Cincinnati*, 521 F.ed 555, 561 (6th Cir. 2013) ................................25

*King v. Hardwood*, 852 F.3d 568, 587-88 (6th Cir. 2017), *cert. denied*,
   2018 WL 311323 (Jan. 8, 2018) ........................................................27

*Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1248 (6th Cir. 1990)...................36

*Leaks v. City of Shaker Heights*, No. 1:15-cv-02060
   (N.D. Ohio Oct. 16, 2015) ........................................................35, 39

*Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 596 F. Supp. 2d 1101,
   1123–24 (M.D. Tenn. 2009)........................................................41

*Mallin v. City of Eastlake*, 755 F. Supp. 2d 819 (N.D. Ohio 2010) ........................40

*Marchese v. Lucas,* 758 F.2d 181, 188 (6th Cir. 1985) ...........................................36

*Medina v. City of Portland*, No. 3:15-CV-00232-BR, 2015 WL 4425876,
   at *6–7 (D. Or. July 17, 2015) ............................................... 44-45

*Meyers v. City of Cincinnati*, 14 F.3d 1115, 1120 (6th Cir. 1994)....................33, 39

*Miller v. Calhoun County*, 408 F.3d 803, 815-16 (6th Cir. 2005)..........................38

*Mink v. Knox*, 613 F.3d 995, 1009-10 (10th Cir. 2010) .........................................20

*Misch v. The Comty. Mutual Ins. Co.*, 896 F. Supp. 734, 738
   (S.D. Ohio 1994)........................................................................15

*Mitchell v. City of Hamilton*, No. 1:11-CV-764, 2012 WL 701173, at *5
   (S.D. Ohio Mar. 1, 2012)............................................................44

*Mitchell v. Forsyth*, 472 U.S. 511, 525–27, 105 S.Ct. 2806,
   86 L.Ed.2d 411 (1985) ...................................................................1

*Moldowan v. City of Warren*, 578 F.3d 351, 370 (6th Cir. 2009) ........................1, 12

*Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978) ...............13, 33, 35, 39, 42

*Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992)................................................29

*Nusku v. Williams*, 490 U.S. 319, 326-27 (1989) ....................................................15

*O'Donnell v. Knott,* No. CV 16-2040, 2017 WL 4467508
    (E.D. Pa. Oct. 6, 2017)...................................................................................... 18-21

*Pearson v. Callahan*, 555 U.S. 223, 232–33, 129 S.Ct. 808,
    172 L.Ed.2d 565 (2009)......................................................................................17

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986) ...........................34, 36

*Pinnavaia v. F.B.I.,* 218 F. App'x 646, 647 (9th Cir. 2007) ...................................46

*Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014) ..........................................23

*Roth Steel Prod. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983)..............15

*S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 566–67
    (6th Cir. 2007)................................................................................................ 45-46

*Sanders v. Jones*, 845 F.3d 721, 731 (6th Cir. 2017) .......................................24, 26

*Sennett v. United States*, 778 F. Supp. 2d 655, 656 (E.D. Va.
    2011), aff'd, 667 F.3d 531 (4th Cir. 2012)..........................................................45

*Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148 (1962)) ..................................32

*St. John v. Hickey*, 411 F.3d 762 (6th Cir. 2005) ....................................................38

*The City of Parma v. Campbell*, 8th Dist. No. 79041, 2001 WL 1352657, at
  *5 (Nov. 1, 2001))..................................................................................40

*Thomas v. City of Chattanooga*, 398 F.3d 426, 430-33 (6th Cir. 2005)............38, 41

*United States v. Harness*, 453 F.3d 752, 755 (6th Cir. 2006)................................26

*United States v. Mittelman,* 999 F.2d 440, 443 (9th Cir.1993) .............................46

*Williams v. City of Cleveland*, 2009 U.S. Dist. LEXIS 61346 (N.D. Ohio
  July 16, 2009)............................................................................... 35, 38-39

*Wright v. City of Canton*, 138 F.Supp.2d 955 (6th Cir. 2001) ................................36

## Statutes

28 U.S.C. §1331 ..............................................................................................1

42 U.S.C. §1983 ..............................................................1, 16, 33, 36, 39, 41

42 U.S.C. §1985(3) ...............................................................................11, 14, 29

42 U.S.C. § 2000aa(a)......................................................................................44

42 U.S.C. § 2000aa–6(a)(1) .............................................................................44

42 U.S.C.A. §1985(3) ......................................................................................29

## Rules

6th Cir. R. 26.1................................................................................................i

6th Cir. R. 34(a) ..............................................................................................x

Civ. R. 12(b)(6)............................................. 14-15, 17, 33-35, 40, 43-44

Fed. R. App. P. 34(a)(1)..................................................................................x

Fed. R. Civ. P. 10(c)................................................................................25

Federal Privacy Protection Act ........................................... 14, 30, 44-46

Ohio Rev. Code §2909.04(B) ............................................3, 8, 13, 27, 30

Ohio Revised Code Chapter 2744.....................................................1, 31

Ohio Revised Code §737.12 ................................................................36

## STATEMENT OF REASONS WHY THE COURT
## SHOULD HEAR ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a)(1) and 6 Cir. R. 34(a), Defendants-Appellants the City of Parma ("the City"), Kevin Riley ("Riley"), and Thomas Connor ("Connor")[1] respectfully request oral argument. Oral argument will assist this Court in understanding the facts, procedural history, and the legal issues involved. Oral argument will also permit counsel to answer the Court's questions on any issues. Defendants-Appellants respectfully ask this Court to schedule the matter for oral argument.

---

[1] Riley and Connor are sometimes collectively referred to as "the Officers."

x

## I.   STATEMENT OF JURISDICTION

The jurisdiction of the United States District Court for the Northern District of Ohio, Eastern Division, was based on federal question jurisdiction under 28 U.S.C. §1331 and the civil rights statute, 42 U.S.C. §1983.

A District Court's denial of a motion to dismiss predicated upon a defense of qualified immunity is subject to an immediate appeal.  "A defendant who is denied qualified immunity may file an interlocutory appeal with this Court only if that appeal involves the abstract or pure legal issue of whether the facts alleged by the plaintiff constitute a violation of clearly established law." *Berryman v. Rieger,* 150 F.3d 561, 563 (6th Cir.1998); *Mitchell v. Forsyth*, 472 U.S. 511, 525–27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Moldowan v. City of Warren*, 578 F.3d 351, 370 (6th Cir. 2009). This court thus has jurisdiction to hear the appeal of Defendants Riley and Connor.

The denial to the City's motion to dismiss is likewise subject to interlocutory review, as the City's appeal is inextricably intertwined with the appeal of Riley and Connor. *Bailey v. City of Ann Arbor*, 860 F.3d 382, 385 (6th Cir. 2017), citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 523 (6th Cir. 2016).

As to the state law claims, the  motions to dismiss were predicated upon immunities conferred by Ohio Revised Code Chapter 2744, and  interlocutory

1

appellate jurisdiction as to all such claims against all defendants under the collateral order doctrine. *Chesher v. Neyer*, 477 F.3d 784, 794 (6th Cir. 2007).

## II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Did the District Court err in denying the Motion to Dismiss filed by Riley and Connor?

2.    Did the District Court err in denying the Motion to Dismiss filed by the City of Parma?

## III.    STATEMENT OF THE CASE AND FACTS

### A.    Introduction.

Plaintiff/Appellee Anthony Novak, a Parma resident with no position or affiliation with the Parma Police Department, created a Facebook page that for all intents and purposes appeared to be an official posting of the Parma Police Department. Novak's creation was so similar to the department's official Facebook page that a number of Parma residents called police dispatch, posted concerns online, and expressed confusion as to whether Novak's page was genuine. The page was accessible only for a matter of hours, but in that brief time Novak used his page to post factually untrue statements, to cause confusion, and to divert and occupy the resources of the Parma Police Department.

Parma utilizes its official Facebook to communicate with citizens about real-time criminal matters, and the turmoil Novak caused was substantial. As a result of

2

significant confusion he caused, and because of the potential for substantial harm inherent in any such activities that interfere with police operations, Novak was investigated and arrested. More precisely, Novak was charged with a violation of Ohio Rev. Code §2909.04(B), which makes it a crime to "knowingly use any computer...so as to disrupt, interrupt, or impair the functions of any police...operations." Indicted by a grand jury, Novak pled not guilty. He was acquitted at trial.

Novak then filed suit against the City of Parma and Officers Riley and Connor. His civil action attempts to recast his disruptive, malicious, and dangerous activities as high-minded political satire or deft parody. Not only was Novak's page not labeled as satire or parody, Novak readily admits in his Amended Complaint that he took affirmative steps to convince the public that his fake page was genuine and that it was indeed the Parma Police Department's official page. For example, when a notice to alert citizens of Novak's bogus page was posted by the Parma Police on the department's legitimate Facebook page, Novak repeated the *exact same notice* on his page, intending and hoping to cause confusion to the citizens of Parma. He also quickly deleted citizens' comments posted to his imposter page that would have clarified to readers which page was authentic and which was not.

3

In denying the motions to dismiss the claims alleged in Novak's Amended Complaint, the trial court concluded that Novak's page was a "parody" and thus protected by the First Amendment. The trial court ignored, however, admissions contained in the Amended Complaint, admissions which demonstrate that the fake page was not intended as a parody at the time of its posting, that it was not understood as a parody by many, that it was intended to disrupt actual police activities, and that it in fact undermined and interfered with the police department's communications with the public. Whatever Novak's motivation, his actions caused, and were meant to cause, actual confusion to Parma citizens. His attempt to disrupt police actions does not constitute protected speech, and the District Court erred in treating Novak's page as expression protected under the First Amendment. This error infects the legal analysis employed by the District Court in considering the motions to dismiss.

Even if Novak's misleading, counterfeit page was protected speech, no constitutional rights to post bogus social media pages were so "clearly established" at the time of the ensuing investigation that they would have been apparent to a reasonable officer. The Officers, as a matter of law, should not be subject to civil litigation for investigating Novak's page and providing evidence obtained to the Cuyahoga County Prosecutor's Office, which then decided to present the matter to a grand jury and prosecute Novak. Novak should not be permitted to drag the City

4

and the Officers through exhaustive, expensive, and extensive discovery that will require considerable municipal resources.

Further, as to the claims against the City of Parma, the Amended Complaint contains only conclusory, boilerplate allegations. The claims against the City should be dismissed because no actionable municipal liability claim is stated. The denial of the motions to dismiss in full is an error that this Court should correct on appeal.

## B.   Factual Background And Allegations In The Amended Complaint.

On March 2, 2016, Novak created a fake Facebook page for the purpose of criticizing the Parma Police Department. (Oct. 18, 2017 Amended Complaint, R. 6, Page ID #1250.) Novak's posts included five items that resembled posts on the actual, authorized Police Facebook page, but with important changes to their language. These altered items included the following:

> An apology for neglecting to inform the public about an armed white male who robbed a Subway sandwich shop, requesting assistance identifying the "African American woman" loitering in front of the shop while it was robbed "so that she may be brought to justice."

> A recruitment post "strongly encouraging minorities to not apply," announcing a "written exam for basic Police Officer for the City of Parma" comprised of "a 15 question multiple choice definition test followed by a hearing test" that, if passed, guaranteed recognition "as an officer of the Parma Police Department."

5

(*Id.*).

Novak used his personal Facebook account to share the counterfeit page with his friends, who in turn shared it with their friends, resulting in widespread exposure. (Amended Complaint, R. 6, Page ID #1252-53.) Some people understood that Novak's page was fake and presumably thought it was funny. (*Id.*). However, as acknowledged in the Amended Complaint, there were others "who expressed confusion." (*Id.*) Indeed, some people posted comments on the bona fide police page about Novak's page, demonstrating clearly that they did not recognize it as "obvious parody." (*Id.*). In fact, several Parma residents telephoned the police department to convey their concern about Novak's page and to alert the department that it existed. Others called the police to "inquire whether it was authorized."[2] (Amended Complaint, R. 6, Page ID #1271.)

Novak enjoyed the deceit and the confusion he had created. He prolonged and aggravated the growing confusion by actually deleting "a small number of pedantic comments" which would have exposed his page as a fraud, had the public been permitted to read them. (Amended Complaint, R. 6, Page ID #1253). The Parma Police Department felt it necessary to post a clarifying announcement on its bona fide page warning the public about Novak's page. The clarifying

---

[2] In fact, as shown by the trial testimony attached to the Amended Complaint, some people expressed anger and outrage at the police department over the content on Novak's fraudulent page. (Trial Transcript attached to the Amended Complaint, R. #6-1, Page ID #1372-73, 1381, 1406, 1412, 1488, 1510, 1575.)

announcement advised that the fraudulent page was under investigation and asked the public to disregard all posts on Novak's page. (Amended Complaint, R. 6, Page ID #1255.) Novak responded not by "satirizing" the official announcement, but by magnifying the befuddlement: he posted *the exact same announcement on his fraudulent page*. (Amended Complaint, R. 6, Page ID #1259.)

The Parma Police Department wanted Novak's fraudulent page removed as soon as possible because it was causing confusion. (Amended Complaint, R. 6, Page ID #1254.) No one could anticipate what Novak would next publish on his page or the damage he could create. Lt. Riley authorized an investigation into who created the fraudulent page and requested Det. Connor to take the lead. (*Id*.) Novak was eventually identified as the potential or likely author of the fake Facebook page. (Amended Complaint, R. 6, Page ID #1255.)

Per the Amended Complaint, Riley and Connor conferred with Timothy Dobek, the City's Law Director and Prosecutor, before preparing a warrant for Novak's arrest. The ensuing warrant alleged that Novak "CREATED A FAKE FACEBOOK ACCOUNT, PURPORTING IT TO BE A LEGITAMATE [*sic*] PARMA POLICE FACEBOOK PAGE." The arrest warrant was approved and signed by Parma Municipal Court Magistrate Edward Fink. (Amended Complaint, R. 6, Page ID #1261.)

7

Novak was arrested on March 25, 2016. (Amended Complaint, R. 6, Page ID #1261.) On that same date Connor sought and obtained a search warrant for Novak's apartment, seeking internet capable devices used to create the fraudulent Facebook page that "appeared to match the real Facebook account used and maintained by the Parma Police Department." (Amended Complaint, R. 6, Page ID #1265-66).

Novak was bound over to Cuyahoga County and his case was in the hands of County Prosecutors from that point forward. (Amended Complaint, R. 6, Page ID #1268.) A *grand jury found that there was probable cause* to prosecute Novak under Ohio Rev Code §2909.04(B). (*Id.*) Ohio Rev. Code §2909.04(B) provides:

> No person shall knowingly use any computer, computer system, computer network, telecommunications device, or other electronic device or system or the internet so as to disrupt, interrupt, or impair the functions of any police, fire, educational, commercial, or governmental operations.

(Amended Complaint, R. 6, Page ID #1260.)

The case went to trial. A motion to dismiss at the conclusion of the evidence was denied – which demonstrates a judicial conclusion that the evidence could support a conviction – and the matter was given to the jury. Novak was acquitted.

## C.    Procedural History.

On October 10, 2017, Novak filed suit against the City of Parma, Riley, and Connor. (Complaint, R. 1, Page ID #1-63.) Novak filed his First Amended

8

Complaint on October 18, 2017. (Amended Complaint, R. 6, Page ID #1238-1623.) On January 15, 2018, two Motions to Dismiss for Failure to State a Claim were filed: one by Connor and Riley together, the other by the City. (City of Parma Motion to Dismiss, R. 12, Page ID #1631-1786; Kevin Riley and Thomas Connor Motion to Dismiss, R. 13, Page ID #1787-1814.) *See also,* Reply Briefs (March 28, 2018 City of Parma Reply in Support of Motion to Dismiss City, R. 17, Page ID #1875-93; March 28, 2018 Kevin Riley and Thomas Connor Reply in Support of Motion to Dismiss, R. 18, Page ID #1894-1918.) The District Court granted the respective motions to dismiss in part, but only as to some peripheral claims. The motions were denied with respect to the central claims and the principal arguments of the motions. (April 5, 2018 Opinion and Order, R. 19, Page ID #1919-39.)

In reaching its decision, the District Court did not merely construe facts in the light most favorable to Novak, but also accepted as true conclusions of law and unwarranted inferences set forth in Novak's Amended Complaint. The District Court also failed to consider the impact of admissions contained in Novak's Amended Complaint favorable to the Officers and the City and dispositive of certain claims. For example, the District Court concluded: "The officer Defendants had no evidence of any disruption of police services, nearly three weeks after Plaintiff took the Facebook page down." (Opinion and Order, R. 19, Page ID #1921.) But ample evidence of disruption and impairment is conceded in the

Amended Complaint itself: residents were confused as to the false nature of Novak's page and its content. (Amended Complaint, R. 6, Page ID #1253, 1271.) They called the police to inquire. Novak further concedes in his pleading that he contributed to the confusion by deleting comments which would have exposed the fraudulent nature of the page had he permitted them to remain and that he reposted the notice from the bona fide police page to prolong the deception. (Amended Complaint, R. 6, Page ID #1253, 1259.)

The District Court erred in concluding that Novak's fraudulent page was "parody" and thus constitutionally protected speech. (Opinion and Order, R. 19, Page ID #1927.) The fraudulent page was intended to be a deception, not a parody. It was not labeled as parody or satire. It was not a broad characterization of the official page, but a counterfeit page meant to fool and confuse the reader.[3] Further, Novak's affirmative step of deleting comments that would have informed readers his page was not legitimate, and disproves as a matter of law any notion that his posting was a parody. (Amended Complaint, R. 6, Page ID #1253; *see also*, #1259.) The District Court also accepted as true Novak's argument that Connor knew, or should have known, that the arrest warrant contained false information.

---

[3] Alec Baldwin portraying President Trump on Saturday Night Live is "parody" and "satire." No one watching the program could conclude that Mr. Baldwin is actually President Trump, and his exaggeration of the president's mannerisms and appearance constitute the *sine qua non* of parody. Novak's page was as a matter of law not "parody."

The District Court accepted Novak's suggestion notwithstanding Connor's testimony at the criminal trial that Novak's page certainly appeared to be a legitimate police department page. (Amended Complaint Exhibit A, Trial Transcript, R. #6-1, Page ID #1455, 1457 ("the banner, the patch, the badge, all that appeared to be the same.")) Connor also testified, "when I initially opened it, I go, wow, this is our page." (Amended Complaint Exhibit A, Trial Transcript, R. #6-1, Page ID #1605.) Det. Connor did acknowledge that after further investigation it became apparent to him, an officer with "years of experience working in Internet crimes," that Novak's page was fake, but a number of ordinary Parma residents remained confused by the page and did not appreciate that it was not legitimate.[4] And once again, Novak contributed to and prolonged the confusion by deleting comments intended to expose the ruse. (Amended Complaint, R. 6, Page ID #1253, 1271.)

Other erroneous conclusions, each of which is discussed more fully below, include the decision to allow the claims against the City of Parma to proceed; the denial of the motion to dismiss the claims of conspiracy to violate civil rights (even though it found that Novak relied upon an inapplicable statutory provision, 42 USC §1985(3), in making the allegation); and the District Court's denial of the

---

[4] Any counterfeit $20 bill will eventually be identified as counterfeit after examination by a trained expert. But that fact does not lead to the conclusion that the bill is a parody, or an artistic expression, or protected by the First Amendment.

request to dismiss the state law claims based on Novak's mere allegations of the Officer's alleged "bad faith, wanton, or reckless behavior."

The question of law presented on appeal is whether the *facts alleged by Novak* in his Amended Complaint, if true, would constitute a violation of rights conferred to Novak by clearly established law and thus state a proper claim. The answer is that the facts alleged by Novak are insufficient, and  District Court's decision denying the respective motions to dismiss should be reversed.

## IV.    SUMMARY OF ARGUMENTS

The District Court erred in denying in part the Motion to Dismiss filed by Officers Connor and Riley. First, Novak alleges that the Officers provided erroneous testimony at trial, but Officers are absolutely immune from claims predicated upon trial testimony given in judicial proceedings. *Moldowan v. City of Warren,* 578F.3d 351, 390 (6th Cir. 2009).

Second, the defense of qualified immunity shields police officers and other government officials performing discretionary functions where their "conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  In this case any constitutional right to post the fake page was certainly not clearly established at the time of the investigation.

Third, the District Court erred in concluding that the fraudulent page constitutes "parody" and was constitutionally protected speech. The Amended Complaint concedes that Novak's page purported to state facts and was intended to confuse the public. The page was not a caricature or parody as demonstrated by Novak's attempts to deceive the public as to which page was real including deleting comments exposing the fake page, and it was certainly reasonable for the Officers to conclude that Novak's conduct was a violation of Ohio Rev. Code. §2909.04(B). Novak disrupted, interrupted, and/or impaired police activity, and his Amended Complaint does not permit a contrary conclusion.

Fourth, the District Court erred in concluding the Amended Complaint set forth facts sufficient to rebut the presumption of probable cause created by the grand jury indictment.

Fifth, the District Court erred in denying the motion to dismiss  as respects Novak's §1983 claims predicated upon an alleged unlawful search and seizure and malicious prosecution (Claims 7-11).

As to the City's Motion, the District Court erred in denying the motion to dismiss the claims alleging *Monell* liability (Claims 12-14), as the Amended Complaint does not allege plausible facts to support these claims. The District Court erred in denying the motion to dismiss the conspiracy to violate civil rights

13

claim (Claim 15), even though the District Court concluded that Novak based that claim upon an inapplicable statutory provision, 42 USC §1985(3).

The Federal Privacy Protection Act does not apply and thus Count 16 should have been dismissed. The supervisor liability claim against Riley fails because Novak cannot meet the requisite elements of the claim, thus, Count 19 (erroneously listed as "Count 18", and referred to the District Court as "Count 18a") should have been dismissed. Finally, Counts "20-28" (erroneously listed as "Counts 19-27"), allege state law claims that should have been dismissed because Novak's conclusory allegations that the Officers acted with "bad faith, wanton, or reckless" conduct are insufficient to overcome dismissal.

For these reasons, the District Court's decision (Opinion and Order R. 19, Page ID #1919-39) should be reversed and all claims against Defendants-Appellants should be dismissed.

## V.    ARGUMENT

### A.    The District Court Erred In Denying The Motion To Dismiss Filed By Riley And Connor.

#### 1.    Standard of review.

This Court reviews *de novo* a district court's ruling on a motion to dismiss a complaint for failure to state a claim under Rule 12(b)(6). *See Bower v. Fed. Exp. Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).

14

A motion to dismiss under Civ. R. 12(b)(6) attacks the legal sufficiency of the complaint. *Roth Steel Prod. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983). In determining whether to dismiss, the complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true. *Bower, supra,* at 203; *Misch v. The Comty. Mutual Ins. Co.*, 896 F. Supp. 734, 738 (S.D. Ohio 1994). A conclusory complaint will not survive a motion to dismiss, as "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, paragraph one of the syllabus (2007).

The very purpose of Rule 12(b)(6) is to permit the court to remove from the case, before discovery, claims that are flawed in their legal premises and destined to fail. *Advanced Cardiovascular Systems, Inc. v. Slimed Life Systems, Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993) (citing *Nusku v. Williams*, 490 U.S. 319, 326-27 (1989)). As noted by the district court in *Iacampo v. Hasbro, Inc.*, 929 F. Supp. 562, 567 (D. R.I. 1996), "[l]ike a battlefield surgeon sorting the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a paring of viable claims from those doomed by law."

Thus, while the Amended Complaint at issue here is to be construed in the light most favorable to Novak, there are limits to the construction he is to receive. Factual allegations are to be accepted as true, and reasonable inferences supportive of Novak's claim should be accepted as well. *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 (6th Cir. 2013) (en banc). But facts and reasonable inferences are the limit. The Court need not accept as accurate Novak's supposition, nor his conclusions of law, not even those conclusions expressly articulated in the Amended Complaint. *Gregory v Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

> **2.    Riley and Connor are entitled to qualified immunity against Novak's claims arising under § 1983. Claims 1-11 of the Amended Complaint should be dismissed.**

The defense of qualified immunity extends to government officials performing discretionary functions where their "conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 471–72 (N.D. Ohio 2012), (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). This defense "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir.1994).

16

The two-part test for qualified immunity in the context of a 12(b)(6) motion is: (1) whether the facts alleged show violation of a constitutional right; and (2) if so, whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232–33, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

Novak's Amended Complaint does not satisfy these requirements. The District Court erred in denying the Officers' Motion to Dismiss.

> **3.      The First Amendment claims (counts 1-6) fail to state a claim because Novak had no "right" to post a fraudulent Facebook page intended to confuse the public. Even if such a right is assumed for purposes of argument, it was not a right "clearly established" at the time of the police investigation.**

Novak's First Amendment claims, whether styled as retaliation (Counts 2-6) or prior restraint (Count 1),[5] should be dismissed. Novak had no clearly established right[6] to create a false internet page so realistic that *people actually called the police to express confusion and anger.* Novak's page was not an exercise in

---

[5] The first six counts of the Amended Complaint argue slightly different versions of a First Amendment retaliation claim, and all fail for the same reasons.

[6] In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court of the United States eliminated the requirement that qualified immunity issues be considered in any particular order. Thus, courts can first consider whether federal law forbidding an action was clearly established at the time of that action, instead of first analyzing the sometimes more difficult question of whether the law actually forbade the action. In this case, Defendants-Appellants believe Novak had no right to post the fraudulent page, but the Court need not consider that point if it concludes such a right was not "clearly established" at the time.

caricature, satire, or parody, but an effort to mislead the public into thinking that his page was a genuine publication of the Parma Police Department. Novak's desire to mislead and confound is demonstrated by his efforts to deepen the confusion after he realized that some people were fooled. All these facts are admitted in the Amended Complaint itself, and they distinguish Novak's case from the case law on which Novak relies.

Novak relies, for example, on *O'Donnell v. Knott,* No. CV 16-2040, 2017 WL 4467508 (E.D. Pa. Oct. 6, 2017), with respect to the retaliation allegations found in Counts 1-6 of the Amended Complaint. The plaintiff in *O'Donnell* allegedly satirized one Kathryn Knott, the daughter of the local chief of police, after Ms. Knott's involvement in the assault of two gay men and after she placed a homophobic post on social media. O'Donnell created an account on a social media site with the username "Knotty is a Tramp." *Id.* at *1. O'Donnell posted a publicly available photograph of Ms. Knott, and used the account to "satirically comment" on a number of current events. His posts regarding Ms. Knott included statements such as: "I'm an entitled princess who does not deserve to be charged with the beat down of some gay guys;" "I'm practicing ... lap dancing so I can get a job to buy more booze;" and "I'll be getting some striped pajamas or some orange ones for Christmas. Hope I can model them on twitter." *Id.* at *6. In response, Chief Knott sent two detectives to O'Donnell's place of employment (which was out of his and

their jurisdiction). They confronted O'Donnell in front of her boss, which led to her termination. *Id.* at *3. O'Donnell sued the detectives, Chief Knott, and the district attorney. The defendants moved to dismiss, arguing that O'Donnell's site was illegal, defamatory, amounted to identity theft, and was not protected by the First Amendment.

The district court in *O'Donnell* denied the motion. It cited case law standing for the proposition that whether a statement "could reasonably be understood as fact [as opposed to parody or satire] is a question of law." *Id.* at *6 (citing *Farah v. Esquire Magazine*, 736 F.3d 528, 535 (D.C. Cir. 2013)). Ultimately, the *O'Donnell* court looked to the fake profile itself and determined that it was so obviously satirical on its face that no reasonable reader could believe otherwise:

> Here, the Knotty is a Tramp profile **does not use Kathryn Knott's first name**. Moreover, like the plaintiff in *Mink* and **unlike the appellant in *AmerisourceBergen***, the profile uses only a variation of her last name. The profile also **refers to "Knotty" in the third person**, and uses an unambiguously derogatory and insulting term to characterize her – "Tramp," which the Merriam–Webster Dictionary defines as a "woman of loose morals" or a "prostitute." (https://www.merriam-webster.com/dictionary/tramp) (last visited, September 21, 2017). Thus, in reviewing the profile itself, I conclude that it is entirely plausible that a reasonable reader would *not* believe that Kathryn Knott actually created this profile and used it to comment on articles about herself.

*Id.* at *10 (emphasis added).

19

Novak's page here differs from the posts at issue in *O'Donnell* in material and dispositive respects. O'Donnell's page did not purport or appear to be created by Ms. Knott, while Novak's appeared to be an official police publication. Nor did O'Donnell take affirmative steps to cause or prolong confusion as to whether the page was created by Knott herself. Novak's page was *not* labeled[7] as parody or satire, and has been admitted in the Amended Complaint, Novak did take the affirmative step of deleting comments tending to expose his page as a sham. (Amended Complaint, R. 6, Page ID #1253.) Novak also intentionally caused confusion by posting the exact same notice that appeared on the actual police page, the notice alerting the public of Novak's unauthorized page.  (*Id*., Page ID #1259.) ("To deepen his satire, Mr. Novak re-posted the [Real FB Page's] Facebook Notice on the parody account.") The dispositive issue in *O'Donnell* was whether the page reasonably could have caused confusion as to its authenticity. The court concluded that there could not be confusion. Here there is no such issue, as Novak's Amended Complaint alleges and concedes that people actually were confused and angry and did question the page's authenticity. (*Id.,* Page ID #1253 (there were "commenters who expressed confusion"); *Id.,* Page ID #1271 (Parma residents

---

[7] Courts have repeatedly cited these disclaimers when providing protection to satirical web pages and articles. *See Mink v. Knox*, 613 F.3d 995, 1009-10 (10th Cir. 2010) (noting the long disclaimer on a blog post making fun of a professor stating that it was not genuine, and ultimately concluding that "no reasonable reader" would believe that the post contained fact rather than hyperbole); *Farah v. Esquire Magazine*, 736 F.3d at 538.

called the Police Department to "inquire whether it was authorized.")) Given these allegations in the Amended Complaint, the District Court erred in concluding that "No reasonable person–whether police officer or Parma citizen–would believe that Plaintiff's posts were describing actual facts about the Department [.]"  (Opinion and Order, R. 19, Page ID #1927.)

Because Novak created and promoted actual confusion concerning the authorship of his page, the page was not protected speech. *See AmerisourceBergen Corp. v. Does*, 81 A.3d 921 (Pa.Super. 2013), the case distinguished in *O'Donnell. AmerisourceBergen Corp.* arose from the unlawful appropriation of a corporate executive's identity and the posting comments on a website regarding the financial status of the executive's business.  *Id.* at 924. The executive happened to be the president of a subsidiary of ABC, and neither he nor ABC authorized the comments. The person behind the statements did not use a fictitious or pen name when posting the comments, but rather the "name of a real person in an executive position with one of ABC's affiliates." Thus, the poster "falsely attributed the postings to [the corporate executive]," which the court determined to be unprotected speech. *Id.* at 929.

The actual confusion caused by Novak's fraudulent page is the same here and dispositive.  *Compare J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, 650 F.3d 915 (3d Cir. 2011), cited in *O'Donnell*, in which a student created a juvenile and

21

unsophisticated imposter Myspace.com "profile" for her principal.   Her efforts included the following "About me" section:

> HELLO CHILDREN[.] yes. it's your oh so wonderful, hairy, expressionless, sex addict, fagass, put on this world with a small dick PRINCIPAL[.] I have come to myspace so i can pervert the minds of other principal's [sic] to be just like me. I know, I know, you're all thrilled[.] Another reason I came to myspace is because—I am keeping an eye on you students (who[m] I care for so much)[.] For those who want to be my friend, and aren't in my school[,] I love children, sex (any kind), dogs, long walks on the beach, tv, being a dick head, and last but not least my darling wife who looks like a man (who satisfies my needs) MY FRAINTRAIN....

*Id.* at 921. Upon discovering the post the school suspended the student, who filed suit. The court in *Blue Mountain* denied the school's motion to dismiss, but only because the student took steps to limit the post to her friends, because the site did not identify the principal by name, and because the profile was "so juvenile and nonsensical that no reasonable person could take its content seriously, ***and the record clearly demonstrates that no one did***." *Id.* at 929 (emphasis added).

This Court need not engage in debating whether Novak's page *could* cause confusion, as the courts in the cases cited above were required to do. Novak's page *did* cause confusion, and no right to deliberately cause and prolong public confusion exists.   Even assuming such a right does exist, it was not clearly established at the time of the events in question. The District Court's decision denying dismissal of the First Amendment claims should be reversed.

22

**4.  Novak's Fourth Amendment claims (Counts 7-11) should be dismissed.**

**a.  The malicious prosecution claims fail, warranting dismissal of Count 11.**

**i.  Novak's Amended Complaint does not plead facts sufficient to establish the essential elements of a malicious prosecution claims.**

To support a claim of malicious prosecution, a plaintiff must establish that:

> (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014). Novak has not pled sufficient facts to establish the first two elements of his malicious prosecution claims, and they should be dismissed.

The Officers did not control or participate in the prosecutor's decision to seek an indictment and try the case. Novak does allege that the Officers knowingly made false statements or failed to disclose evidence, but even accepting those allegations, the malicious prosecution claims fail because Novak does not claim or allege that either Officer had the requisite control over the prosecution.

The arrest warrant filled out by Det. Connor states that Mr. Novak created a "FAKE FACEBOOK ACCOUNT, PURPORTING IT TO BE A LEGITIMATE

23

PARMA POLICE FACEBOOK PAGE." The accuracy of this information is not disputed. The District Court takes issue with the warrant because Connor did not identify a specific police function or service that was disrupted by Novak and because Riley did not "list" his "concerns for officer safety." (Opinion and Order, R. 19, Page ID #1929.) These perceived omissions, coupled with the allegations that "both Officer Defendants testified against Plaintiff at trial and falsified evidence," were deemed sufficient by the District Court to establish the first element of a malicious prosecution claim. (*Id.*, Page ID #1931.)

Case law does not support the District Court's conclusion. "[T]ruthful participation in the prosecution decision is not actionable." *Sanders v. Jones*, 845 F.3d 721, 731 (6th Cir. 2017). A review of Novak's own factual allegations set forth in the Amended Complaint establishes that his page was designed to appear as though it were a page authorized by the Police Department. Further, Novak repeated on his page an actual notice from the actual page. As acknowledged in the Amended Complaint, there were some people "who expressed confusion" about whether it was the department's official page and Novak deliberately contributed to the confusion by deleting "a small number of pedantic comments" that exposed his page as a fraud. (Amended Complaint, R. 6, Page ID #1253-54.)

> **ii.   Connor's eventual conclusion that Novak's page was not an official police page does not save the malicious prosecution claims from dismissal.**

Novak's argument in support of malicious prosecution claims relies upon a single question, posed by Novak's counsel during cross-examination, and taken out of context. Connor acknowledged at trial that he came to conclude upon analyzing Novak's page that it was not an official page of the Parma Police Department. Novak would have the Court rely upon this single answer while ignoring the totality of Connor's testimony, his explanation of why it was not immediately apparent even to himself that Novak's page was fake, and how he "really had to figure out what we had here" because of the similarities between the two pages.[8] (Amended Complaint, Exhibit A, Transcript of Proceedings, R. 6-1, Page ID #1455, 1457.) Connor explained that "the banner, the patch, the badge, all that appeared to be the same…when I initially opened it, I go, wow, this is our page." (*Id.*, Page ID #1605.) To be sure, Connor acknowledged that after reading the posts it became apparent to him, an officer with "years of experience working in Internet crimes," that Novak's page was fake, but what of it? His knowledge and

---

[8] Novak will presumably attempt to minimize the significance of the transcript of his criminal trial despite repeatedly relying on it throughout his brief in opposition to the motions to dismiss. (*See e.g.* R. 15, Page ID #1826, 1828, 1829, where Novak relies upon the testimony of the Officers.) The District Court cited to the transcript and Riley's testimony. (R. 19, Page ID #1931.) This Court need not accept that everything the Officers testified to in the transcript is true, but should instead treat the exhibit as an allegation that the Officers made the statements contained in the transcripts. *Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008). Any argument that this Court cannot consider the transcript testimony is incorrect because: (1) the trial transcript is attached to and referred to in Novak's Amended Complaint and is central to his claim (Fed. R. Civ. P. 10(c)), and (2) the portions of the trial transcript that are germane to the Officers' legal arguments.

experience in the area does not negate, as is acknowledged in Novak's Amended Complaint, that some Parma residents were in fact confused as to the false nature of the page. (*See* Amended Complaint, Exhibit A, Transcript of Proceedings, R. 6-1, Page ID #1455, 1457; Amended Complaint, R. 6, Page ID #1253, 1271.) More importantly for purposes of malicious prosecution claims, Connor's eventual awareness that Novak's page was not legitimate does not establish that Connor falsified evidence or that Riley approved any falsification of evidence.

Connor's eventual subjective belief that the page was not bona fide is of no assistance to Novak's claims. *See United States v. Harness*, 453 F.3d 752, 755 (6th Cir. 2006) ("Just as a subjective belief by the arresting officer would not establish probable cause where none existed, a subjective belief by the arresting officer cannot destroy probable cause where it exists."). *Sanders* notes that an officer may be liable for a malicious prosecution claim for falsifying evidence, but also notes that the claimant's burden in such cases is significant, as the prosecutor generally makes the decision to prosecute. *Id.* at 733. Here, there is no factual allegation that the Officers prompted or urged a prosecutor's decision to bring charges. Thus, facts sufficient to support the first element of a malicious prosecution claim are absent, and dismissal should have been granted. The Officers are not alleged to have taken any specific actions to have controlled, influenced, or participated in the decision to prosecute.

26

### iii. Novak cannot meet the second element of his malicious prosecution claims, the element requiring lack of probable cause.

The second element of a malicious prosecution claim requires a plaintiff to allege facts sufficient to establish lack of probable cause for his criminal prosecution. The District Court erred in concluding that allegations that false statements contained in an *arrest warrant* affidavit are sufficient to rebut the presumption of probable cause created by a grand jury indictment. (Opinion and Order, R. 19, Page ID #1932.) These allegations against the Officers, even when presumed to be true, are insufficient to establish that the Officers *knowingly and recklessly* made false statements, or that the alleged statements were material to Novak's ultimate prosecution, two of the three elements necessary to rebut the presumption created by a grand jury indictment. *See King v. Hardwood*, 852 F.3d 568, 587-88 (6th Cir. 2017), *cert. denied*, 2018 WL 311323 (Jan. 8, 2018).

Statements in the *arrest warrant* would not be a consideration for the grand jury or county prosecutor as respects whether Novak should be prosecuted, nor would the arrest warrant be considered "evidence" for any purpose. Further, the essential statement in the arrest warrant, that Novak created a fake Facebook page that purported to be an official legitimate Parma Police page, was true.

With respect to Novak's ultimate prosecution, Novak was charged under Ohio Rev. Code §2909.04(B), which makes it a crime to "knowingly use any

27

computer...so as to *disrupt, interrupt, or impair* the functions of any police...operations." Full, absolute, or cataclysmic disruption of police services is not required; any interruption or impairment is sufficient. Here, the Amended Complaint itself acknowledges interruptions and impairment to police functions caused by the fake Facebook page. This being so, the Amended Complaint fails to allege facts sufficient to support a finding of a lack of probable cause. (*See* Amended Complaint, R. 6, Page ID #1253, 1271.)

> **b.** **The Fourth Amendment claims in Counts 7-9 are premised on an unsupported allegation that Connor lied in preparing the arrest warrant and should be dismissed.**

In allowing the wrongful arrest and unlawful search and seizure claims to proceed, the District Court relied on allegations set forth in the Amended Complaint that Connor lied in preparing the arrest warrant. The alleged "lie" is the statement that Novak created a fake page that purported to be a genuine and authorized police Facebook page. (Opinion and Order, R. 19, Page ID #1929.) But once again, other allegations in Novak's Amended Complaint concede the accuracy and truthfulness of the statements on the arrest warrant. There *were* Parma residents who thought that Novak's page was an authorized official department page. (*See* Amended Complaint, R. 6, Page ID #1253, 1271.) Nor can Novak premise allegations upon small excerpts of Connor's trial transcript when the larger testimony as a whole confirms that there were no inaccuracies in the

28

arrest warrant. (Amended Complaint, Exhibit A, Transcript of Proceedings, R. 6-1, Page ID #1455, 1457, 1605) ("the banner, the patch, the badge, all that appeared to be the same *** when I initially opened it, I go, wow, this is our page."). Counts 7-9 of the Amended Complaint should be dismissed for failure to state a claim.

### 5.    The conspiracy claim (Count 15) should be dismissed.

The District Court sua sponte amended and corrected the conspiracy count of Novak's Amended Complaint so that the claim could proceed.  (Opinion and Order, R. 19, Page ID#1935.) The conspiracy claim should have been analyzed as actually pled and should have been dismissed.  The Amended Complaint lacks factual support for a claim of conspiracy, but more importantly lacks any allegations, of a racial[9] or class-based discriminatory animus. A 42 U.S.C.A. §1985(3) complaint must "allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action," and dismissal is appropriate when such allegations are lacking. *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992); *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007).

But even as generously amended and corrected by the District Court, the conspiracy claim lacks sufficient factual allegations. *See Twombly*; *Iqbal*. A plaintiff must allege sufficient facts to show a plausible entitlement to relief, but

---

[9] Both Mr. Novak and the Officers are white.

the factual predicate for Novak's conspiracy claims are: "Defendants and John Doe came to a mutual agreement and understanding to shut down Mr. Novak's Facebook page, *even though no reasonable officer would believe his speech was a crime*."   (Amended Complaint, R. 6, Page ID #1291.) The particular crime considered at the time was a violation of Ohio Rev. Code § 2909.04(B), which makes it a crime to "knowingly use any computer...so as to disrupt, *interrupt, or impair* the functions of any police...operations." Disruption, interruption, and impairment of police operation had already occurred before the Officers took any actions concerning Novak's fraudulent page, and Novak's conclusory allegation of "conspiracy" cannot overcome those acknowledged facts. Count 15 should be dismissed and the District Court's decision should be reversed.

### 6. The Federal Privacy Protection Act does not apply (Count 16). This claim should be dismissed.

The Officers incorporate by reference the entirety of the Federal Privacy Protection Act ("PPA") section set forth below under the second assignment of error for the City. The PPA claim should also be dismissed because the PPA does not provide for recovery against an individual officer. *Garcia v. Montgomery Cty., Md.,* No. CIV. JFM-12-3592, 2013 WL 4539394, at *7 (D. Md. Aug. 23, 2013).

30

**7.  The supervisor liability claim against Lt. Riley should be dismissed (Count 19, erroneously listed as Count 18).**

Novak's conclusory, boilerplate allegations that Connor's actions were "encouraged and condoned" at every step by Riley are not supported by any specific facts and are insufficient to state a claim for supervisor liability. The District Court erred in denying the motion to dismiss this claim. (Opinion and Order, R. 19, Page ID #1937.) Dismissal should be ordered in the absence of allegations of "specific, affirmative acts" by the supervisor that encouraged or condoned the wrongful conduct. *Dillingham v. Millsaps*, 809 F.Supp.2d 820, 845 (E.D. Tenn. 2011). Novak's Amended Complaint alleges no specific, affirmative act of support or encouragement on the part of Riley, and the Amended Complaint is legally insufficient. *See also Twombly*; *Iqbal.*

**8.  The state law claims should be dismissed as a matter of law (Counts 20-29, erroneously listed as Counts 19-28).**

All of Novak's state law claims are to be analyzed in the context of Ohio's Political Subdivision Tort Liability Act, Ohio Rev. Code §2744.01, *et seq*. Because the alleged actions of the Officers were as a matter of law not malicious, wanton, or reckless, the state law claims should be dismissed. *See also Twombly*; *Iqbal* (use of the formulaic statutory language alone is insufficient to survive dismissal).

Although the District Court wrote in its decision that "Plaintiff has alleged sufficient facts that the Officer Defendants' conduct was in bad faith, wanton, or

31

reckless," the decision does not cite which specific factual allegations ostensibly support such contentions. We submit that a *de novo* review of the allegations of the Amended Complaint leads to the conclusion that no facts sufficient to support a claim of bad faith or reckless, or wanton conduct.

"Bad faith…embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Cook v. Hubbard Exempted Vill. Bd. of Educ.*, 116 Ohio App.3d 564, 569 (11th Dist.1996) (citing *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148 (1962)). "Recklessness" constitutes an intentional failure to act, despite a duty to do so, "knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." *Id*. The definition of "wanton misconduct" is in accord (*See Id*.).

The United States Supreme Court has held a properly pled claim "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff cannot simply offer "labels and conclusions or a formulaic recitation of the elements of a cause of action[.]" *Id.*

32

No plausible set of facts supporting a claim that the actions of the Officers were undertaken in bad faith or constituted wanton or reckless conduct were pled in Novak's Amended Complaint, and as a matter of law the state law claims should be dismissed.

**B.     The District Court Erred In Denying The Motion To Dismiss Filed By The City Of Parma.**

**1.     Standard of review.**

As was the case regarding the first assignment of error, this Court reviews *de novo* a district court's ruling on the City's motion to dismiss under Rule 12(b)(6). *See Bower* at 203.

**2.     The final policymaker claim (Count 12) should be dismissed.**

There are only three bases for municipal liability under §1983: (1) when an express policy causes a Constitutional violation; (2) when a widespread practice or custom is so common that it has the effect of a written policy; or (3) when the Constitutional injury is caused by a person with final policymaking authority. *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1120 (6th Cir. 1994). Count 12 alleges that the City of Parma is liable under the third of these bases, i.e., that an official with final policymaking authority directed the actions of the officers. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).

The District Court's analysis of this claim is as follows:

33

The City moved to dismiss Plaintiff's claim that the City is liable for violations of his constitutional rights because the City's law director and chief prosecutor authorized the Officer Defendants to seek and obtain the warrants against Plaintiff. Mot. 15. The City argues that its law director and prosecutor did not have final policymaking authority. Id. at 16. "In Ohio, prosecutors and sheriffs are officials responsible for establishing policy with respect to decisions to prosecute, charge, and arrest, and a political subdivision may be held liable pursuant to Monell for the decisions of those individuals." *Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 470 (N.D. Ohio 2012) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)). Accordingly, the City's argument is without merit.

(Opinion and Order, R. 19, Page ID #1933.)

The District Court's analysis is erroneous. Novak alleged that Law Director and Chief Prosecutor, Timothy Dobeck, directed the Officers in all facets of their investigation, but once again the claim is presented in unsupported, conclusory fashion only. The Amended Complaint alleges no facts as to what Dobeck supposedly did, or when, or how, or the manner in which he communicated with the Officers and supposedly gave them direction. The District Court simply accepted the conclusory, boilerplate allegations Novak presented in "support" of Claim 12 and overlooked the complete absence of any factual underpinning. The motion to dismiss should have been granted as to this count.

When a complaint is challenged under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to *raise a right to relief above the speculative*

34

*level* on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), paragraph one of the syllabus (emphasis added). Case law is abundant that conclusory allegations of municipal wrongdoing or a parroting of the legal elements of a claim with no supporting factual support are insufficient to survive a motion to dismiss. *See Williams v. City of Cleveland*, 2009 U.S. Dist. LEXIS 61346 (N.D. Ohio July 16, 2009) (dismissing claims against a municipality with prejudice because the amended complaint was lacking in factual detail); *Leaks v. City of Shaker Heights*, No. 1:15-cv-02060 (N.D. Ohio Oct. 16, 2015) (granting a motion to dismiss because there were only legal conclusions and no facts to support the *Monell* claim). *Bible Believers v. Wayne Cty.*, 805 F.3d 228, 260–61 (6th Cir. 2015), holds that a showing that an unconstitutional act was taken by an authorized decision maker is required before an entity can be exposed to liability.  These precedents lead to the conclusion that Novak's final policymaker claim should not have survived the 12(b)(6) motion; his Amended Complaint does not allege how Mr. Dobeck exercised the requisite "final policymaking authority."

The determination of which officials actually have the power to make "final" policy is a matter of state law. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988). A municipal employee cloaked with authority to exercise discretion in performing particular

35

functions is not a "final policymaker" for purposes of § 1983 unless the employee's decisions are final, unreviewable, and not constrained by official policies or superior officials. *Id.* at 127. "To determine whether final authority to make municipal policy is vested in a particular official, we must resort to state law…. This includes 'state and local positive law,' such as statutes, ordinances, and regulations, and less formal sources of law such as local practice and custom." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (internal citations omitted).

In *Feliciano,* this Court affirmed dismissal of a final policymaker claim against the City of Cleveland Chief of Police because the City Charter of Cleveland did not provide the Chief with the requisite "final" authority with respect to drug tests. This Court also concluded that allowing such a claim to proceed absent statutory support would unjustly subject the city to simple *respondeat superior* liability. *Id.* at 655-56. And conversely, in *Wright v. City of Canton*, 138 F.Supp.2d 955 (6th Cir. 2001), this Court concluded that an alleged failure of a police chief to properly investigate the use of force *could* state a claim because R.C. 737.12 gave the chief final policymaking authority with respect to internal investigations. *See also, Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1248 (6th Cir. 1990); *Marchese v. Lucas,* 758 F.2d 181, 188 (6th Cir. 1985)

36

(finding the claims were colorable because the county sheriffs who allegedly failed to investigate incidents were final policymakers under Ohio law).

In this case, however, Novak's Amended Complaint contains no allegations that Mr. Dobeck had final policymaking authority to direct the actions of Connor and Riley and no allegation as to the source of any such purported authority. Nor does the District Court's decision cite any such law or source of authority. Indeed, a review of the Parma Codified Ordinances confirms that the Law Director/Prosecutor *is not* given broad authority to direct police officers in their day-to-day police work. (*See* Chapter 139, "Director of Law," providing some authority with respect to civil suits and the prosecution of criminal matters in Parma Municipal Court).[10]   Novak's criminal case was not even prosecuted in Parma Municipal Court, but rather bound over to the Cuyahoga County Prosecutor's Office, which independently decided to pursue the charges and present the case to a grand jury. The "final policymaker" claim should be dismissed.

Moreover, Novak's Amended Complaint acknowledges that the Officers had to apply for the warrant with Magistrate Edward Fink of Parma Municipal Court, who had the "final" say in the matter of the arrest. (Amended Complaint, R. 6, Page ID #1261.) Thus, a neutral judicial officer was required to approve - and did

---

[10]http://library.amlegal.com/nxt/gateway.dll/Ohio/parma_oh/codifiedordinancesoft hecityofparmaohio?f=templates$fn=default.htm$3.0$vid=amlegal:parma_oh

approve - the warrant before it could be served. The Magistrate was the individual who had the "ultimate authority" to issue the arrest warrant.

### 3.   Count 13 alleges that the City of Parma maintained an unconstitutional policy or practice. This claim should be dismissed because the Amended Complaint does not allege prior instance of misconduct or point to a specific unconstitutional policy.

In *Thomas v. City of Chattanooga,* 398 F.3d 426 (6th Cir. 2005), this Court held that an excessive force claim against a city was subject to dismissal absent evidence establishing a clear and persistent pattern of conduct sufficient to prove a custom or policy condoning excessive force. To like effect is *Miller v. Calhoun County*, 408 F.3d 803, 815-16 (6th Cir. 2005), where the court dismissed a claim because the plaintiff failed to make the threshold showing of a clear and persistent pattern of the mistreatment of detainees. Similarly, in *St. John v. Hickey*, 411 F.3d 762 (6th Cir. 2005), the court dismissed a claim of excessive force based on failure to train where the plaintiff failed to demonstrate that the county had ignored a history of abuse sufficient to constitute notice that its training was deficient and likely to cause injury.

Case law makes clear that vague and conclusory allegations of a deficient "policy" or "procedure," like the allegations here, are insufficient to state a claim. In *Williams v. City of Cleveland*, 2009 U.S. Dist. LEXIS 61346 (N.D. Ohio July

16, 2009), the court dismissed claims against a municipality with prejudice because the amended complaint was lacking:

> Plaintiff's amended complaint recites the critical element of a §1983 claim against a municipality - a policy or custom - but ***does so in a conclusory manner***. Plaintiff makes no factual allegations that can support the conclusion that the City has a policy or custom of ignoring exculpatory evidence and continuing with prosecutions. ***To merely state that the City has a policy or custom is not enough; Plaintiff must allege facts, which if true, demonstrate the City's policy, such as examples of past situations where law enforcement officials have been instructed to ignore evidence***. Here, while Plaintiff has alleged facts sufficient to demonstrate that exculpatory evidence was ignored in his case, he has ***not alleged facts from which it can be inferred that this conduct is recurring or that what happened in his case was due to City policy***. Accordingly, the amended complaint would not state a claim cognizable under federal law.

*Id.* at \*12 (emphasis added). *See, also, Leaks v. City of Shaker Heights*, No. 1:15-cv-02060 (N.D. Ohio Oct. 16, 2015) (granting a motion to dismiss of the City of Shaker Heights, noting that the complaint was "merely a threadbare recitation of the element of a *Monell* cause of action." *Id.* at p. 5. There were no facts – only conclusions – that the municipality inadequately trained or supervised its officers or had a custom of tolerating violations of federal rights. Accordingly, the City was dismissed).

Further, case law shows that a plaintiff must point to a specific policy that is allegedly deficient to satisfy the first avenue of relief articulated in *Meyers, supra*. *See Jackson v. City of Highland Park*, 2015 U.S. Dist. LEXIS 68115 (E.D. Mich. May 27, 2015) ("Defendants argue that, because Plaintiff fails to identify a specific

39

policy or custom that he claims caused his alleged constitutional violations, his §1983 claims of municipal liability are subject to dismissal under Rule 12(b)(6). This Court agrees."); *Mallin v. City of Eastlake*, 755 F. Supp. 2d 819 (N.D. Ohio 2010) (dismissing a defendant municipality because "Mallin failed to identify a specific policy or practice….").

Novak alleges no specific custom or policy that was supposedly deficient or any other instances of wrongdoing showing a pattern or practice. This shortcoming notwithstanding, the District Court concluded that the "unconstitutional policy" claim should survive the motion to dismiss and that the cursory allegations found in paragraphs 278-280 of the Amended Complaint were sufficient.  (Opinion and Order, R. 19, Page ID #1933.)

But the Amended Complaint cites only innocuous conduct, such as a direct criminal appeal from a charge of obstructing official business. (*See* Amended Complaint, R. 6, Page ID #1289, citing, *The City of Parma v. Campbell*, 8th Dist. No. 79041, 2001 WL 1352657, at *5 (Nov. 1, 2001)). *Campbell* involved alleged obstruction during a police investigation of a child custody dispute. The case is what it is, but actions of the police officers in response to verbal obscenities, criticisms, and challenges directed at them upon entering a home 19 years ago as a matter of law cannot constitute evidence of "past situations of similar conduct," and the District Court erred in concluding otherwise. (Opinion and Order, R. 19,

Page ID #1933.) The other allegations regarding past incidents are nothing more than legal conclusions regarding other cases in which Mr. Dobeck, the Law Director/Chief Prosecutor, defended the City. (*See* Amended Complaint, R. 6, Page ID #1289-90.) The District Court's treatment of these "allegations" as potential evidence of unconstitutional customs, policies, or practices was erroneous.

### 4.    The failure to train claim (Count 14) should be dismissed.

The District Court relied on the same allegations of the Amended Complaint, those set forth at paragraphs 278-281, in denying the motion to dismiss Count 14. (Opinion and Order, R. 19, Page ID #1934.) Municipal liability may not, however, be imposed because of a single incident of police misconduct. Allowing such claims would "result in the collapsing of the municipal liability standard into a simple *respondeat superior* standard.  This path to municipal liability has been forbidden by the Supreme Court." *See Thomas v. City of Chattanooga*, 398 F.3d 426, 430-33 (6th Cir. 2005).

In order for a plaintiff to succeed on a §1983 claim based on a failure-to-train theory, a plaintiff must demonstrate: (1) the training was inadequate for the tasks performed;  (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury at issue." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 596 F. Supp. 2d 1101, 1123–24 (M.D. Tenn. 2009) aff'd in part on other grounds, 432 F. App'x

41

435 (6th Cir. 2011) (citing *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir.2006)). The deliberate indifference requirement is not satisfied by proof of a mere probability that an inadequately trained officer may inflict a constitutional injury. "The finding that is required is 'that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff.'" *Harris v. Anderson*, No. 5:10-CV-207-KSF, 2011 WL 3267931, at *4 (E.D. Ky. July 29, 2011).

As was explained by the Supreme Court in *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379, 109 S. Ct. 1197, 1200 (1989):

> Only where a failure to train reflects a "deliberate" or "conscious" choice by the municipality can the failure be properly thought of as an actionable city "policy." *Monell* will not be satisfied by a mere allegation that a training program represents a policy for which the city is responsible. Rather, the focus must be on whether the program is adequate to the tasks the particular employees must perform, and if it is not, on whether such inadequate training can justifiably be said to represent "city policy." Moreover, the identified deficiency in the training program must be closely related to the ultimate injury. Thus, respondent must still prove that the deficiency in training actually caused the police officers' indifference to her medical needs. To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under §1983; would result in *de facto respondeat superior* liability, a result rejected in *Monell;* would engage federal courts in an endless exercise of second-guessing municipal employee-training programs, a task that they are ill suited to undertake; and would implicate serious questions of federalism.

Any alleged failure to train the Defendant Officers as to the constitutionality of a fraudulent Facebook page cannot constitute deliberate indifference as defined

42

by case law. A false Facebook page is hardly a typical police situation. The Amended Complaint does not concern use of force on a fleeing felon or a physical arrest, but rather a unique and esoteric legal issue. A municipality should not be held liable for failing to anticipate Novak's conduct and train its officers in the area.

The Amended Complaint is also impermissibly vague as to exactly what training the Officers allegedly had and how it was allegedly deficient, which also subjects the claim to dismissal:

> However, "Plaintiff's use of phrases such as 'failure to train,' [and] 'failure to supervise'... is meaningless without any factual allegations." *Johnson v. Gannon,* No. 3:09–0551, 2010 WL 1658616, at *4 (M.D.Tenn. Apr.23, 2010) (citation omitted). To plead a §1983 claim based on a failure to train sufficient to withstand a Rule 12(b)(6) motion after *Iqbal* and *Twombly,* the plaintiff must plead more facts than those that constitute the alleged underlying constitutional violation. *See Hill v. City of Cincinnati,* No. 1:09–cv–800, 2010 WL 3257725, at *5 (S.D.Ohio Jul.16, 2010) (dismissing claim against the city where the plaintiff pleaded "only facts [that] ... relate to her individual circumstances"), *report and recommendation adopted by,* 2010 WL 3257727 (S.D.Ohio Aug.17, 2010); *Scrap Yard, LLC v. City of Cleveland,* No. 1:10 CV 2465, 2011 WL 3900571, at *4 (N.D.Ohio Sep.6, 2011) (dismissing claims that were "founded on 'a single set of allegedly wrongful acts' " rather than on "violations [that] occurred pursuant to the City of Cleveland's policy or custom.").

> The plaintiff should plead facts regarding the nature of the training and supervision provided to the officers. ***The plaintiff also should plead facts demonstrating deliberate indifference***, such as facts that policymakers "were on notice as to constitutional violations by

43

officers" or "that a pattern of similar constitutional violations [has] occurred." *Mason v. City of Warren Police Dep't,* No. 10–cv–14182, 2011 WL 5025841, at \*12 (E.D.Mich. Oct.21, 2011). Here, Mitchell has pleaded facts concerning only a single set of wrongful acts towards him, not a policy or custom of inadequate training or supervision. Accordingly, the Court will dismiss the constitutional violation claims against the City of Hamilton and Butler County pursuant to Rule 12(b)(6).

*Mitchell v. City of Hamilton*, No. 1:11-CV-764, 2012 WL 701173, at \*5 (S.D. Ohio Mar. 1, 2012) (emphasis added). The failure to train allegations fail to state a claim upon which relief can be granted, and the District Court's decision denying dismissal of it should be reversed.

### 5.    The Federal Privacy Protection Act claim should be dismissed.

The Federal Privacy Protection Act ("PPA") provides:

Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce.

42 U.S.C. §2000aa(a). Section (b) is similar and applies to documentary materials. The PPA provides a civil cause of action for damages and may be brought against the United States, a State, or any other governmental unit, any of which shall be liable for violations of the chapter by their officers or employees while acting within the scope or under color of their office or employment. *Medina v. City of*

44

*Portland*, U.S.D.C. No. 3:15-CV-00232-BR, 2015 WL 4425876, at \*6–7 (D. Or. July 17, 2015) (citing 42 U.S.C. § 2000aa–6(a)(1)).

The PPA's "suspect exception" applies where government officials "have probable cause to believe that the target of the search has committed an offense, and the materials seized are related to that offense." *Sennett v. United States*, 778 F. Supp. 2d 655, 656 (E.D. Va. 2011), aff'd, 667 F.3d 531 (4th Cir. 2012) (finding there was probable cause to believe a criminal statute was violated so the exception applied). As stated by *S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 566–67 (6th Cir. 2007): "The goal of the [PPA] is to protect innocent third parties in possession of documents and papers from governmental intrusions which would unnecessarily subject their files and papers to search and seizure. Consequently, it is these persons who may avail themselves of the remedy provided by the statute." Thus, the "suspect exception" serves the goal of the statute, as it allows a search of a suspect's possessions while protecting innocent third parties. *Id.*

The District Court erred in concluding that the suspect exception does not apply. (Opinion and Order, R. 19, Page ID #1935.) Novak himself was the focus of the criminal investigation – he was not an innocent third party. The District Court's finding that there was not probable cause was in error. (*Id.*) (*See* argument under the first assignment of error, relating to the Fourth Amendment claims premised on

45

malicious prosecution which are incorporated herein as if fully re-written). Probable cause for the search existed as a matter of law because, as the Amended Complaint acknowledges, (1) a neutral magistrate signed the warrant, and (2) a grand jury concluded that there was probable cause for the criminal charge. Thus, the PPA claim fails.[11] The claims against Parma should have been dismissed as a matter of law, and the District Court's decision should be reversed.

## VI.    CONCLUSION

For the reasons stated above, the motions to dismiss all claims brought against the City of Parma, Kevin Riley, and Thomas Connor should have been granted in full. The District Court's decision should be reversed, and final judgment should be entered in favor of all Defendants.

---

[11] *See S.H.A.R.K.*, 499 F.3d at 567 (dismissing the case finding: "Both the target of the investigation and the party who was subject to the search and seizure are one in the same. Accordingly, the 'suspect exception' to the PPA would preclude the plaintiffs from prevailing on this claim."); *Pinnavaia v. F.B.I.,* 218 F. App'x 646, 647 (9th Cir. 2007) ("Finally, the district court properly dismissed Pinnavaia's claims under the Privacy Protection Act, because Pinnavaia concedes he was a criminal suspect and that his residence was searched pursuant to a valid warrant. *See United States v. Mittelman,* 999 F.2d 440, 443 (9th Cir.1993) (Privacy Protection Act "does not apply to criminal suspects ... nor does it require any showing greater than probable cause in order to secure a warrant for a search ...")).

46

Respectfully Submitted,

s/Monica A. Sansalone

**MONICA A. SANSALONE (0065143)**
**STEVEN D. STRANG (0085444)**
GALLAGHER SHARP LLP
Sixth Floor – Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio  44115
Ph: (216) 241-5310
Fax: (216) 241-1608 – Fax
msansalone@gallaghersharp.com
sstrang@gallaghersharp.com
***Attorneys for Defendants-Appellants***
***The City of Parma, Kevin Riley and***
***Thomas Connor***

47

## CERTIFICATE OF COMPLIANCE PURSUANT TO
### Fed. R. App. P. 32(G) and 6 Cir R. 32

The undersigned certifies that:

1.   This brief complies with the 13,000 word type-volume limitation of Fed. R. App.P. 28.1(e)(2) or 32(a)(7)(B) because:

     This brief contains a total of 10,849 words from the beginning of the Statement of Appellate Jurisdiction to the end of the Conclusion, which are the parts of the brief not exempted from the word-count by Fed. R. App. P. 32(f).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

     This brief has been prepared in a proportionally spaced typeface using Word in <u>14-point</u> font size and <u>Times New Roman</u> type style.

s/Monica A. Sansalone

**MONICA A. SANSALONE (0065143)**
**STEVEN D. STRANG (0085444)**
GALLAGHER SHARP LLP
*Attorneys for Defendants-Appellants*
*The City of Parma, Kevin Riley and*
*Thomas Connor*

48

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 2, 2018 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Monica A. Sansalone
**MONICA A. SANSALONE (0065143)**
**STEVEN D. STRANG (0085444)**
*Attorneys for Defendants-Appellants*
*The City of Parma, Kevin Riley and*
*Thomas Connor*

# -ADDENDUM-
# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to 6th Cir. R. 28(c) and 6th Cir. R. 30(b), Defendants-Appellants

The City of Parma, Kevin Riley and Thomas Connor, hereby designates the

following materials, filed of record with the District Court, as relevant documents

necessary for an effective understanding of the issues raised in this appeal:

## SIXTH CIRCUIT RULE 30(g)(1) DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| DATE | RECORD NO. | PAGE ID# | DESCRIPTION |
|---|---|---|---|
| October 10, 2017 | R. 1 | Page ID #1-63 | Complaint |
| October 18, 2017 | R. 6, 6-1 | Page ID #1238-1623 | Amended Complaint with Exhibits |
| January 15, 2018 | R. 12, 12-1 | Page ID #1631-1786 | City of Parma Motion to Dismiss with Exhibit |
| January 15, 2018 | R. 13 | Page ID #1787-1814 | Kevin Riley and Thomas Connor Motion to Dismiss |
| February 28, 2018 | R. 15 | Page ID #1818-48 | Response to Kevin Riley and Thomas Connor Motion to Dismiss |
| February 28, 2018 | R. 16 | Page ID #1849-74 | Response to City of Parma Motion to Dismiss |
| March 28, 2018 | R. 17 | Page ID #1875-93 | Reply in Support of City of Parma Motion to Dismiss |
| March 28, 2018 | R. 18 | Page ID #1894-1918 | Reply in Support of Kevin Riley and Thomas Connor Motion to Dismiss |
| April 5, 2018 | R. 19 | Page ID #1919-39 | Opinion and Order |
| April 18, 2018 | R. 21 | Page ID #1960-92 | Notice of Appeal |

50